## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DANIELLE RUIZ, MERCEDES TERRELL, :
SARAH STAGE, STEPHANIE RAO and :
YODIT YEMANE a/k/a JODIE JOE, :
 :
   Plaintiffs, : C.A. No.
 :
v. :
 : **COMPLAINT**
VOXX LIQUORS LLC d/b/a VERA BAR :
AND GRILL, :
 : **(Jury Trial Demanded)**
   Defendant. :
 :

   Plaintiffs DANIELLE RUIZ, MERCEDES TERRELL, SARAH STAGE, STEPHANIE RAO and YODIT YEMANE a/k/a JODIE JOE, (collectively, "Plaintiffs"), file this Complaint against VOXX LIQUORS LLC, d/b/a VERA BAR AND GRILL ("Defendant") respectfully allege as follows:

### BACKGROUND

   1. This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, VERA BAR AND GRILL located at 2310 Marlton Pike W, Cherry Hill, New Jersey 08002 (**hereinafter referred to as the "Night Club" or "Vera"**).

   2. As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Misappropriation of Likeness; d) Unfair Competition/False Endorsement N.J.S.A. 56:4-1, et.seq.; e) Negligence/Respondeat Superior; and f) Unjust Enrichment.

   3. In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any

of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, Defendant Voxx Liquors LLC, is a limited liability company formed under the laws of the state of New Jersey, with its principal place of business located at 2310 West Marlton Pike, Cherry Hill, New Jersey, 08002. Upon information and belief, Voxx Liquors LLC operates Vera Bar and Grill, which is located at 2310 Marlton Pike W, Cherry Hill, New Jersey 08002.

8.      Venue is proper in the United States District Court for the District of New Jersey because Defendant's principal place of business is located in Cherry Hill, New Jersey, (Camden County).

9.      A significant portion of the alleged causes of action arose and accrued in Cherry Hill, New Jersey and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Cherry Hill, New Jersey.

## PARTIES

### *Plaintiffs*

10.     Plaintiff Danielle Ruiz ("Ruiz") is a well-known professional model, and a resident of Los Angeles County, California.

11.     Plaintiff Mercedes Terrell ("Terrell") is a well-known professional model, and a resident of Orange County, California.

12.     Plaintiff Sarah Stage ("Stage") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Stephanie Rao ("Rao") is a well-known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Yodit Yemane a/k/a Jodie Joe ("Yemane") is a well-known professional model, and a resident of Los Angeles County, California.

***Defendants***

15.     Defendant, Voxx Liquors LLC, is a limited liability company formed under the laws of the state of New Jersey and registered to conduct business in New Jersey. During times relevant to this action, Voxx Liquors LLC operated Vera Bar and Grill.

## FACTUAL ALLEGATIONS

16.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

17.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

18.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

19.     In the case of each Plaintiff, this apparent claim was false.

20.     Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

21.     No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

22.    Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

23.    Ruiz is a veteran of the entertainment industry and an extremely accomplished, established, and highly sought model, host, and actor. She shot to fame by winning Miss Hawaiian Tropic Brazil and competing worldwide. As a model, she has worked for Foreplay Lingerie, Elegant Moments, Escante Lingerie, Hustler Apparel, Body Zone Apparel, and Ziggy NY Shoes. She was also a contract model for Fredericks of Hollywood and L*Space, also for Rockstar Energy's Miss Motorcross and Monster Energy Dime Squad Girl. She has appeared in many magazines and graced the covers of Maxim and Elegant. Her career on TV is just as impressive with appearances on The New Girl, The Finder, Breaking In, Cougar Town, CSI Entourage, The Jonas Brothers, Miami Trauma, Dark Blue, Love Bites, Friends with Benefits, Battle LA, The Ex's and hosting the series WPT Royal Flush. She has over 182,000 followers on Instagram and over 16,000 followers on Twitter.[1]

24.    That we know of, Ruiz is depicted in the photo in Exhibit "A" to promote Vera on its Instagram page. This Image was intentionally altered to make it appear that Ruiz was either an employee working at Vera, that she endorsed Vera, or that she was otherwise associated or affiliated with Vera.

25.    Ruiz has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

26.    Terrell is an American model and spokesmodel. Ms. Terrell is a contract model who travels and works with Monster Energy Supercross. Ms. Terrell also appears with The Superbike Races special events and also with Moto GP Championship races. Ms. Terrell is probably best known and has a huge social media following as the main Ring Girls for Bellator MMA fighting. Ms. Terrell has featured in a number of magazines and has appeared on the cover of Wheels and Heels magazine, Dub Magazine, Beer magazine, Girls Lowrider and many more. She also has her own podcast show known as The MAJic hour, and her talk show named "Mercedes and the Chap." She currently has 585,000 Instagram followers, 4.6 million followers on Facebook, and 126,000 followers on TikTok.

27.    That we know of, Terrell is depicted in the photo in Exhibit "B" to promote Vera on its Facebook page. This Image was intentionally altered to make it appear that Terrell was either an employee working at Vera, that she endorsed Vera, or that she was otherwise associated or affiliated with Vera.

28.    Terrell has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

29.    Stage has worked for brands such as Fredericks of Hollywood, Jafra Cosmetics, Buffalo Jeans, Sky Clothing, and Beach Bunny Swimwear. She has also done commercials for Kia, Budweiser, Samsung, and has appeared in magazines such as Maxim, Shape, and Allure. Stage is a social media influencer with over 2 million followers on Instagram, over 21,000 followers on Twitter, 50,000 views on Snapchat, and over 113,000 likes on Facebook.

30.    That we know of, Stage is depicted in the photo in Exhibit "C" to promote Vera on its Instagram page. This Image was intentionally altered to make it appear that Stage was either an employee working at Vera, that she endorsed Vera, or that she was otherwise associated or affiliated with Vera.

31.     Stage has never been employed at Defendant's establishment, ha never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32.     Rao who is originally from Miami, FL currently resides in Los Angeles and is an influencer/model. She is currently representing Fashion Nova and has previously worked for Shein & PrettyLittleThing. She has appeared alongside Kim Kardashian in a Carolina Lemke glasses advertisement as well as other high profile ad campaigns. She has her own website which focuses on providing a fitness journey to her clients and promoting physical, mental, and spiritual wellness. Rao has over 1.1 million Instagram followers.

33.     That we know of, Rao is depicted in the photo in Exhibit "D" to promote Vera on its Facebook page. This Image was intentionally altered to make it appear that Rao was either an employee working at Vera, that she endorsed Vera, or that she was otherwise associated or affiliated with Vera.

34.     Rao has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35.     Yemane is a social media and modeling influencer with well over 1 million followers on Instagram, while she has appeared in music videos with Tyga and appeared on Nick Cannons' Wild N Out and worked for Pretty Little Thing Fashion House this model of Eritrean descent Is mostly known and now famous in the fashion industry for her near decade long association and Brand Ambassador with Fashion Nova (which has more than 10% of the USA fashion market) she was the first model to have her own clothing line collaboration with Fashion Nova, and the 34 year old is regarded as one of the highest paid models in the industry.

36.    That we know of, Yemane is depicted in the photo in Exhibit "E" to promote Vera on its Facebook page. This Image was intentionally altered to make it appear that Yemane was either an employee working at Vera, that she endorsed Vera, or that she was otherwise associated or affiliated with Vera.

37.    Yemane has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

38.    Defendant operates (or operated, during the relevant time period,) a Night Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

39.    Defendant owns, operates, and controls Vera's social media accounts, including its Facebook, Twitter, and Instagram accounts.

40.    Defendant used Vera's Facebook, Twitter, and Instagram accounts to promote Vera's, and to attract patrons.

41.    Defendant did this for their own commercial and financial benefit.

42.    Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Vera, endorsed Vera, or was otherwise associated or affiliated with Vera.

43.    Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Vera to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

44.    Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by Vera, and at no point have any of the Plaintiffs ever endorsed Vera or otherwise been affiliated or associated with Vera.

45.    All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs

46.    Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

47.    Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

48.    It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

49.    The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

50.    Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

51.    Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Vera.

52.    Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

53.     In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Vera.

54.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

55.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

56.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Vera's website, Twitter, Facebook, or Instagram accounts.

57.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

## <u>FIRST CAUSE OF ACTION</u>
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)

58.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

59.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein

60.     Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment , or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

61.     Thus, this was done in furtherance of Defendant's commercial benefit.

62.     Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through

secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

63.    Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

64.    As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

65.    Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's

66.    establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

67.    Despite the fact that Defendant was at all times aware that Plaintiffs neither worked at, nor endorsed its establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendants' establishment.

68.    Defendant knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

69.     Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

70.     As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

71.     Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

72.     Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

73.     WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)

74.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

75.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendant and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a

party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

76. Defendant used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market Defendant's businesses, Defendant's establishment, and/or Defendant's establishment events and activities.

77. Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's businesses, Defendant's establishment, and/or Defendant's events and activities as described in this Complaint was false and misleading.

78. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

79. Defendant's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant's establishment, as to the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant establishment events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities.

80.     Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, or Defendant establishment events and activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant's establishment, visit Defendant's establishment, and participate in events at Defendant's establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendant's establishment, visit Defendant's establishment and take part in the events at Defendant's establishment.

81.     Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's establishment and their activities and attracting clientele to Defendant's establishment.

82.     Defendant knew or should have known that their unauthorized use of Plaintiff's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

83.     Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

84.     Defendant's wrongful conduct as described herein was willful.

85.     As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

86.     Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

87.     The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant was aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their image to advertise Defendant's businesses.

88.     Defendant has caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

89.     Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Misappropriation of Likeness)

90.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above and incorporate the same by reference as though fully set forth herein.

91.     Plaintiffs have a right to control the commercial use of their names, images, and likenesses. Under New Jersey law, the unauthorized use of a person's image or likeness for a predominately commercial purpose is unlawful.

92.     Defendant's use of Plaintiffs' images and likenesses to advertise its business constitutes a use for commercial purposes.

93.     Defendant's use of Plaintiffs' photographs and likenesses did not occur in connection with the dissemination of news or information and was without a redeeming of public interest or historical value.

94.     Defendant never obtained Plaintiffs' consent for the use of their images and likenesses.

95.     Defendant's use of each Plaintiffs' photographs and likenesses was willful and deliberate.

96.    As a direct and proximate result of Defendant's scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendant's establishment, Defendant enjoyed increased revenues and profits.

97.    As a further direct and proximate result of Defendant's deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

<u>FOURTH CAUSE OF ACTION</u>
**(Unfair Competition/False Endorsement N.J.S.A. 56:4-1, *et.seq.*)**

98.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

99.    The aforesaid acts of Defendant's unauthorized use of Plaintiffs' images and likenesses in connection with creating the false impression that they were affiliated with and endorsed Defendant's business constitutes unfair competition under N.J.S.A. 56:4-1.

100.    As a direct and proximate result of Defendant's scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendant's establishment, Defendant enjoyed increased revenues and profits.

101.    As a further direct and proximate result of Defendant's deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

102.    Defendant's wrongful and deliberate conduct has caused significant damage to Plaintiffs, both directly and indirectly, and Plaintiffs respectfully request treble damages as authorized by N.J.S.A. 56:4-2.

<u>FIFTH CAUSE OF ACTION</u>
**(Negligence/Respondeat Superior)**

103.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

104.    Plaintiffs are further informed and believe and hereon allege that Defendant maintains or should have maintained employee policies and procedures which govern the use of

intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and nonconsensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

105.    Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in its advertising practices.

106.    Defendant owed a duty of care to Plaintiffs to ensure that its advertising and promotional materials and practices did not infringe on their property and publicity rights.

107.    Similarly, Defendant further owed a duty of care to Plaintiffs to ensure that its promotional and/or advertising materials and campaigns did not deceptively or falsely portray a connection, affiliation, or sponsorship between Plaintiffs and Defendant.

108.    Defendant breached its duty of care to Plaintiffs by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

109.    Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and New Jersey law, were not violated. Defendant breached its duty of care to Plaintiffs by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

110.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Image was published without consent, authorization, or compensation, and done so in a false, misleading and/or deceptive manner.

111.    As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

112.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

113.    As set forth in detail above, Defendant published Plaintiffs' Images in order to promote the Defendant's establishment to the general public and potential clientele.

114.    Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at or endorsed the Defendant .

115.    Defendant's purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

116.    Upon information and belief, Defendant did in fact benefit commercially due to its unauthorized use of Plaintiffs' Images.

117.    Defendant has been enriched by its unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to its establishment.

118.    Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

119.    As such, Plaintiffs have been damaged in an amount to be determined

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a)    For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b)    For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Vera's Night Club;

(c)     For punitive damages and treble damages under the Lanham Act, 15 U.S.C. §

1117 and N.J.S.A. 56:4-1, et.seq.;

(d)     For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this

Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and N.J.S.A. 56:4-1,

et.seq.;

(e)     For such other and further relief as the Court may deem just and proper.



OF COUNSEL:
John V. Golaszewski, Esquire*
THE CASAS LAW FIRM, PC
1325 Avenue of the Americas, 28th Floor
New York, NY 10019
T: 646-872-3178
F: 855-220-9626
john@talentrights.law

Dated: June 27, 2025

*Pro Hac Vice Application Forthcoming

*/s/ Gerald B. Baldino, III*
Gerald B. Baldino, III, Esquire
Attorney I.D. No. 295012019
SACCHETTA & BALDINO
24 S. Broad Street
Woodbury, NJ 08096
P: (856) 845-4400
F: (856) 845-0400
gbaldino@sbattorney.com
*Attorney for Plaintiffs*